UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BRIAN LENFEST, individually and on behalf
of all others similarly situated,

                Plaintiff,

    v.

VERIZON ENTERPRISE SOLUTIONS LLC,

                Defendant.

Case No. 1:13-cv-11596 (NMG)

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant Verizon Enterprise Solutions LLC ("Verizon") respectfully submits this memorandum in support of its motion to dismiss the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.    INTRODUCTION

All of the claims contained in the Amended Complaint are subject to a binding arbitration agreement, as demonstrated in Verizon's Motion to Compel Arbitration, separately filed with the Court on this date. As the Federal Arbitration Act, 9 U.S.C. §§1, *et seq.*, requires the Court to promptly ascertain whether the dispute is subject to arbitration and, if so, leave all aspects of the merits to the arbitrator, *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983), Verizon respectfully submits that the Court should resolve the Motion to Compel Arbitration before addressing the instant Motion to Dismiss.

However, should the Court reach the merits of Plaintiff's claims, the Amended Complaint suffers from several obvious and fatal defects and should be dismissed with prejudice.

*First*, Plaintiff's claims under Massachusetts General Law Chapter 93A ("Chapter 93A"), are barred by the filed tariff doctrine. That doctrine, long part of Massachusetts law, charges customers with constructive notice, by operation of law, of all the terms of a duly filed and approved tariff. *See, e.g., Perkins v. New York, N.H. & H.R. Co.*, 232 Mass. 336, 339, 122 N.E. 306, 307 (1919). There can be no "failure to disclose" as to prices, terms and conditions contained in a tariff. *See CMG Holdings, Inc. v. AT&T Corp.*, No. 992129E, 11 Mass. L. Rptr. 283, 2000 WL 230356, at *7 (Super. Ct. Mass. Feb. 17, 2000). Here, the relevant Verizon tariff expressly references the Minimum Spend Level ("MSL") that is at the heart of Mr. Lenfest's failure to disclose claims. Declaration of Monna Roberson ("Roberson Decl."), Attach. 1, Ex. A at 58. The filed tariff doctrine also bars any challenge to the reasonableness of Verizon's intrastate long distance rate, because state law prohibits any departure from the rates and terms set forth in the filed tariffs. *See* M.G.L. ch. 159 § 19.

*Second*, any finding that MSLs are unlawful under Chapter 93A would be preempted by federal law. The MSLs at issue are also part of an interstate long-distance plan, and the use of MSLs has been expressly approved by the FCC. *See In re Petition for Declaratory Ruling on Issues Contained in Thorpe v. GTE*, Memorandum Opinion and Order, 23 FCC Rcd. 6371, 6386 (¶ 27) (2008). Only the FCC may declare a particular interstate long distance rate or rate structure unlawful. *See Boomer v. AT&T Corp.*, 309 F.3d 404, 420 (7th Cir. 2002) ("Congress intended federal law to govern the validity of the rates, terms, and conditions of long-distance service contracts."). Although the FCC no longer requires telephone carriers to file tariffs for interstate long-distance service, most courts have concluded that whether the rates are "just and reasonable" is still a matter of judgment under the Communications Act and therefore still a matter in the exclusive purview of the FCC and the federal courts.

*Third*, Plaintiff is wrong in his claim that the MSL is unlawful because it is not a "fee for service." In fact, monthly minimum charges, or what Verizon calls "Minimum Spend Levels" or "MSLs," are legitimate and oft-used billing procedures that provide a lower per-minute rate in exchange for a minimum usage commitment. Countless other industries throughout Massachusetts use similar billing structures.

Count Three of the Amended Complaint, a common law unjust enrichment claim, rises or falls with the Chapter 93A claims. Because the charges were properly disclosed in a tariff, and are within the exclusive jurisdiction of the FCC—which has found the charges to be lawful— then it cannot be "inequitable" for VES to retain Mr. Lenfest's payments for those charges.

The Amended Complaint is also striking for what is left out. There is no contract claim, although many of Mr. Lenfest's complaints sound like run of the mill contractual billing disputes. In fact, it is clear that Plaintiff was bound by contract to pay these minimum monthly fees in exchange for lower per-minute rates and other benefits. The existence of a contract between Plaintiff and Verizon requires dismissal of Plaintiff's unjust enrichment claim, because a claim for unjust enrichment can never lie where there is a contract between the parties. Nor can a garden-variety breach of contract, such as a billing error, rise to the level of a Chapter 93A claim. *See Whitinsville Plaza, Inc. v. Kotseas*, 378 Mass. 85, 100-01, 390 N.E.2d 243, 251-252 (Mass. 1979). Finally, Plaintiff has failed to plead with specificity (as required) *any* facts that would give rise to a Chapter 93A claim. *See Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 18-19 (1st Cir. 2002) (quoting *Powers v. Boston Cooper Corp.*, 926 F.2d 109, 111 (1st Cir. 1991)) (under Federal Rule of Evidence 9(b) the complaint must specify "the time, place, and content of the alleged false or fraudulent representations.").

For these multiple reasons, should the Court reach the merits of this motion, it should dismiss all of Mr. Lenfest's claims with prejudice.

## II.     BACKGROUND

Verizon provides long distance business services in Massachusetts and other States. As such, Verizon has filed a tariff detailing the terms of its Massachusetts intrastate long-distance service with the Massachusetts Office of Consumer Affairs and Business Regulation's Department of Telecommunications and Cable ("DTC"). *See* Verizon Enterprise Solutions LLC, Massachusetts Tariff No. 2, Attach. 1, Ex. A ("Tariff"). Though Verizon no longer publishes its interstate service rates via tariff with the FCC,[1] it maintains a publicly available Product Guide detailing the terms of its interstate service offerings. Verizon Enterprise Solutions LLC Product Guide, FirmRate Advantage Plan, Attach. 1, Ex. D, General Terms and Conditions, Attach. 1, Ex. F. The Product Guide, along with the Verizon Service Agreement and Massachusetts tariff, establish the terms under which Plaintiff purchases intrastate and interstate long distance services from Verizon.[2] The Amended Complaint shows that Plaintiff, Brian Lenfest, is a Verizon

---

[1]     The FCC detariffed interstate wireline telecommunications service in a series of orders. *See In re Policy and Rules Concerning the Interstate, Interexchange Marketplace*, Second Report and Order, 11 FCC Rcd. 20730 (1996); *In re Policy and Rules Concerning Interstate, Interexchange Marketplace*, Order on Reconsideration, 12 FCC Rcd. 15014 (1997); *In re Policy and the Rules Concerning Interstate Interexchange Marketplace*, Second Order on Reconsideration and Erratum, 14 FCC Rcd. 6004 (1999); *Section 272(f)(1) Sunset of the BOC Separate Affiliate and Related Requirements*, Report and Order and Memorandum Opinion and Order, 22 FCC Rcd 16440 (2007) ("InterLATA Detariffing Order"). With interstate long-distance service no longer governed by federal tariffs, price, terms and service details are contained in service agreements between the carriers and the customer.

[2]     The tariff is a publicly filed document with the force of law, of which this Court may take judicial notice. *See Bellerman v. Fitchburg Gas & Elec. Light Co.*, No. WOCV0923B, 26 Mass. L. Rptr. 107, 2009 WL 3086005 (Mass. Sup. Ct. Sept. 9, 2009). The Court may also rely upon the Product Guide and Service Agreement in the context of this 12(b)(6) motion, because they are central to Plaintiff's claims as contractual documents governing the service Plaintiff receives from Defendant. *See, e.g., Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988) ("'[W]hen plaintiff fails to introduce a pertinent document as part of his pleading, defendant may

customer and receives long distance service for his business located in Boston, Massachusetts pursuant to the Verizon FirmRate Advantage Plan.

### A.      The Massachusetts Tariff

The Verizon Massachusetts tariff establishes the terms of Verizon customers' intrastate service in Massachusetts. *See* Tariff at 58-60; M.G.L. ch. 159 § 19 ("No common carrier shall . . . charge, demand, exact, receive or collect a different rate, joint rate, fare, telephone rental, toll or charge for any service rendered or furnished by it  . . . from that applicable to such service as specified in its schedule filed with the department and in effect at the time.") The tariff provides that the Massachusetts FirmRate Advantage Plan is "an add-on service to the interstate FirmRate Advantage plan." Tariff at 58. It provides that "[a] Minimum Spend Level Charge applies to Customers subscribing to this plan as specified in [Verizon's] interstate Product Guide," *id.,* and instructs the reader to visit a website, www.verizonldregulatory.com, in order to access the Product Guide itself. This site includes links to the Product Guide's General Terms and Conditions, the FirmRate Advantage Product Guide section, and the Verizon Service Agreement.

### B.      The Interstate Product Guide

The Interstate Product Guide for the FirmRate Advantage Plan includes two sections relevant to Plaintiff's claims, the FirmRate Advantage Plan section and the General Terms and Conditions section. *See* Verizon Enterprise Solutions LLC Product Guide, Attach. 1, Exs. D, F. The FirmRate Advantage Plan section details the terms of the Plan, including the Minimum Spend Level ("MSL") requirement:

> When the Customer's billing falls below the Minimum Spend Level in any full billing period, a shortfall charge will be applied

---

introduce the exhibit as part of his motion attacking the pleading.'") (quoting Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedures* § 1327 (3d ed.)); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

which is equal to the difference between the Minimum Spend Level (MSL) and the actual contributory billing for that billing period. Direct dialed calls (including intrastate and interstate calls), operator assisted calls, directory assistance calls, Toll Free calls and Monthly Recurring Charges, International Plan Monthly Recurring Charges, free minute promotions, percentage discount promotions and Toll Free MRC waivers will contribute toward meeting the MSL unless otherwise excluded in the service description in the applicable Product Guide. Only charges of the Company will contribute to the MSL. Taxes, surcharges and charges billed by other carriers on the Customer's bill will not contribute to the MSL.

Product Guide, FirmRate Advantage Plan, Attach. 1, Ex. D at 3.[3]

### C.   The Verizon Service Agreement

The Service Agreement incorporates by reference the Interstate Product Guide, stating that the customer "acknowledge[s] that it is impractical to print in this document the complete Product Guide, which contains service descriptions, charges and other terms and conditions applicable to the Services and providing the Product Guides on Verizon's website and making it available upon request are reasonable means of notice and incorporation of those terms." FirmRate Advantage Service Agreement, Attach. 1, Ex. B at 2 ("Service Agreement"). The Service Agreement also provides that the customer has thirty days upon receipt of the Service Agreement to elect to terminate service, and that "[u]se of the Service after the 30 day period constitutes [the customer's] acceptance of the terms and conditions of this Service." *Id.*

## III.   ARGUMENT

### A.   Standard of Review

The Court must dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) "when the facts alleged, if proven, will not justify recovery." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). While the Court accepts as true all well-pleaded facts contained in the

---

[3]   The Product Guide has included the MSL since at least 2005. *See* Attach. 1, Ex. E.

complaint, including all reasonable inferences in the plaintiff's favor, *see Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 56 (1st Cir. 2002); *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999), the Court can reject conclusory assertions and characterizations of the law, *see Varney v. R.J. Reynolds Tobacco Co.*, 118 F. Supp. 2d 63, 67 (D. Mass. 2000) (citations omitted).  '"[B]ald assertions' and unsupported conclusions do not qualify as 'well-pleaded' facts and are no assistance to a plaintiff in defeating a motion to dismiss." *Id.*  "The Court need not conjure up unpled allegations or contrive elaborately arcane scripts in order to carry the blushing bride through the portal." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988).  Instead, "it is the plaintiff's burden to take the step which brings his case safely into the next phase of the litigation." *Id.*

## B.    Plaintiff's Claims Must Be Dismissed Under the Filed Rate Doctrine.

The publicly filed tariff bars recovery in this case.  Plaintiff "cannot claim protection under [Chapter] 93A if he was not in fact deceived, or if the deceptive conduct was not unfair." *LVI Envtl. Servs., Inc. v. Commonwealth Tank, Inc.*, No. ESCV201000089, 2013 WL 2991516, at *5 (Mass. Super. Ct. May 9, 2013).  As a matter of law, Verizon did not deceive the Plaintiff as to the MSL requirement, because that information was included both in its Massachusetts tariff and on the face of his contract with Verizon.  Because Verizon did not deceive Plaintiff in violation of Chapter 93A, Verizon's retention of Plaintiffs' payments cannot be inequitable under the doctrine of unjust enrichment. *See Santagate v. Tower*, 64 Mass. App. Ct. 324, 329, 833 N.E.2d 171, 176 (2005) (unjust enrichment not appropriate where there has been no "retention of money or property of another against the fundamental principles of justice or equity and good conscience").

1.     **The Filed Tariff Doctrine Bars Recovery Under Any Theory of Lack of Notice.**

Under the filed tariff doctrine, as a matter of law all of Verizon's Massachusetts customers are "presumed to have had knowledge of the terms of the [the carrier's] tariff." *CMG Holdings, Inc.*, 11 Mass. L. Rptr. 283, 2000 WL 230356, at *6; *see also Perkins*, 232 Mass. at 339, 122 N.E. at 307.   The tariff plainly states that "[a] Minimum Spend Level Charge applies to Customers subscribing to this plan as specified in the Company's interstate Product Guide.  See www.verizonldregulatory.com."  Tariff at 58.  The Verizon tariff thus notified Mr. Lenfest of the MSL and instructed him to access Verizon's publicly available website which sets forth the text of the Verizon Service Agreement and Product Guide, and describes the 30-day "election period" during which a new Verizon customer can cancel his or her service without penalty.[4]

Federal courts also routinely hold that if an agreement references additional conditions available on the internet, those additional conditions are binding contractual terms.  *See, e.g., Burcham v. Expedia, Inc.*, No. 07cv1963, 2009 WL 586513, at *2 (E.D. Mo. 2009) ("A customer on notice of contract terms available on the internet is bound by those terms.").  Thus, both the reference in the tariff itself *and* the cross-reference in the tariff to the Product Guide served as effective notice to Plaintiff that an MSL would be contained in his long-distance contract. Moreover, even apart from tariff provisions and internet references, a subscriber cannot "accept services he knew were being tendered on the basis of a subscription agreement without becoming

---

[4]     The FirmRate Advantage section of the Product Guide spells out the terms of the FirmRate Advantage Plan, and describes the MSL.  *See* Attach.1, Ex. D at 3.  The Massachusetts tariff also informs FirmRate Advantage Plan customers that the terms of the MSL are "specified in [Verizon's] interstate Product Guide" and points customers to the publicly available Product Guide.  Tariff at 58.

bound by that agreement." *Schwartz v. Comcast*, 256 Fed. App'x 515, 518 (3d Cir. 2007).[5] Plaintiff cannot not now claim he lacked that knowledge or "assert that [he] justifiably relied on any fact that varie[d] or contradict[ed] the terms of the tariff," by claiming he was unaware of the existence of the MSL requirement. *CMG Holdings, Inc.*, 11 Mass. L. Rptr. 283, 2000 WL 230356, at *7.

## 2. The Filed Rate Doctrine Bars a Challenge to Verizon's Intrastate Rates.

Plaintiff is also prohibited by the filed tariff doctrine from challenging the reasonableness of the rates for intrastate services offered under the Plan. The Verizon Massachusetts tariff sets forth the rates, schedules, terms, and conditions under which it renders service to its customers and "limit[s] and define[s] the duty of [Verizon] to supply service. . . . It completely covers the field [of Verizon's intrastate service obligations]." *Lebowitz Jewelers Ltd. v. New England Tel. & Tel. Co.*, 24 Mass App. Ct. 268, 271, 508 N.E.2d 125, 126-27 (1987). By reviewing and approving these tariffs, Massachusetts regulators have determined that the rates and terms of service therein are reasonable and nondiscriminatory. *See MCI Telecomm. Corp., v. AT&T*, 512 U.S. 218, 230 (1994). State law prohibits any departure from the rates and terms set forth in the filed tariffs. *See* M.G.L. ch. 159 § 19. Accordingly, the tariffs are not mere contracts but have "the force and effect of law." *Disk N'Data, Inc. v. AT&T Commc'ns*, 415 Mass 886, 888, 616 N.E.2d 76, 77 (1993). Thus, the filed tariff doctrine deems the terms of the Verizon tariff to be "per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland*

---

[5]     Plaintiff is bound by the contract because he failed to object to the terms of the contract prior to the expiration of the 30-day consideration period included in the contract, *see* Service Agreement at 2, and continued to accept services from Defendant for more than seven years while paying his bills, *see* Amended Compl. ¶¶ 3, 14, 16; *McGurn v. Bell Microproducts, Inc.*, 284 F.3d 86, 89 (1st Cir. 2002) (contract formed where offeree takes the benefit of offered services with the reasonable opportunity to reject them and reason to know they were offered with the expectation of compensation).

*Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994); *see also Keogh v. Chicago Nw. Ry. Co.*, 260 U.S. 156, 163 (1922) (holding that party's "rights as defined by the tariff cannot be varied or enlarged by either contract or tort").

**C.    Plaintiff's Claim that Defendant's MSL Requirement is Unreasonable is Preempted.**

Plaintiff's allegation that the interstate rate charged by Verizon is unreasonable is preempted by the Federal Communications Act.  The Supremacy Clause of the Constitution mandates that federal law is the "supreme law of the land."  U.S. Const. art. VI.  It is a fundamental principle that the Supremacy Clause invalidates state law that "interferes with or is contrary to federal law."  *Free v. Bland*, 369 U.S. 663, 666 (1962) (citing *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1 (1924)).

Here, the regulation of interstate long-distance rates to ensure that they are "just and reasonable" calls for one uniform, national regulator, in this case the FCC.  MSL charges are a legitimate part of long distance rate structures and have been approved by federal regulators. The FCC has found that recurring minimum charges, like those included the Plaintiff's FirmRate Advantage Plan, are perfectly acceptable.  *See In re Petition for Declaratory Ruling on Issues Contained in Thorpe v. GTE*, Memorandum Opinion and Order, 23 FCC Rcd. 6371, 6386 (¶ 27) (2008) (stating that the FCC has examined minimum monthly fee plans and deemed them "lawful").  A federal court, sitting in diversity under the Class Action Fairness Act, 28 U.S.C. § 1332(d), cannot come to a contrary conclusion under the law of any state.

Congress has charged the FCC with ensuring that "[a]ll charges, practices, classifications, and regulations for and in connection with such [interstate] communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful . . ."  47 U.S.C. § 201(b); *see also* 47 U.S.C. § 202(a)

("[i]t shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services").

The FCC possesses exclusive statutory power to review interstate rates and to enforce the just and reasonable rate requirement under sections 201(b) and 202(a), so any state law challenges to the reasonableness or discriminatory effect of rates are preempted. *See Boomer*, 309 F.3d at 418 (Sections 201 and 202, read together, "demonstrate a congressional intent that individual long-distance customers throughout the United States receive uniform rates"). Any other approach would end in a "labyrinth" of rates and threaten the consistency of rates across the country, contrary to the goals of the 1996 Act. *Id.* at 419-420; *see also Dreamscape Design, Inc. v. Affinity Network, Inc.*, 414 F.3d 665, 671-72 (7th Cir. 2005) (federal law preempts state law claims of unreasonable long distance rates); *In re Universal Serv. Fund Tele. Billing Practice Litig.*, 619 F.3d 1188, 1197-98 (10th Cir. 2010) (the Communications Act preempts state law challenges to long distance rates).[6] Indeed, the FCC has plainly stated that it continues to have the regulatory authority to review rates for violation of Sections 201(b) and 202(a). *Petitions of Sprint PCS and AT&T Corp.*, WT Dkt. No. 01-316, 17 FCC Rcd. 13192 (rel. July 3, 2002).

### D.    Plaintiffs' Amended Complaint Fails to State a Claim.

For the reasons set forth above, Plaintiff is barred by the filed rate doctrine and federal preemption from bringing a state law challenge to the reasonableness of the MSL under Chapter 93A or common law principles of unjust enrichment. But even if Plaintiff were not prohibited

_____

[6]    While the Ninth Circuit called into question the preemptive force of Sections 201 and 202 in an early decision, *see Ting v. AT&T*, 319 F.3d 1126, 1139 (9th Cir. 2003), that decision has become an outlier. The majority view in the Circuits and district courts now follows the Seventh Circuit's later decision in *Boomer*.

from mounting a state-law attack on an interstate charge like the MSL, he still has not stated a claim under state law.

<ol>
<li value="1"><strong>The MSL is a Reasonable Rate and Part of a Reasonable Rate Structure Under State Law.</strong></li>
</ol>

Plaintiff's allegation that Verizon has unfairly charged Plaintiff a fee for not providing service, is simply absurd. *See* Amended Complaint ¶¶ 31, 43 ("Amended Compl."); *id.* Ex. A. at 2. Reasonable and permissible charges need not be tied only to the amount of metered long distance calling Plaintiff uses. Acceptable billing structures can be designed in whatever fashion the contracting parties determine is most suitable, as long as they do not conflict with the public interest. *See Beacon Hill Civic Ass'n v. Ristorante Toscano, Inc.*, 422 Mass. 318, 320, 662 N.E.2d 1015, 1017 (1996) ("The general rule of [American] law is freedom of contract" which "rests on the premise that it is in the public interest to accord individuals broad power to order their affairs through legally enforceable agreements.")

This type of rate structure is widely used in many industries that operate in the Commonwealth of Massachusetts. A gym membership fee, for example, provides access to the gym facilities whether or not the customer decides to take advantage of them. A discount "wholesale club," such as Costco or Sam's Club, charges a set annual fee regardless of how often the customer shops at the store. Similarly, Verizon can charge customers a flat fee for providing access to its long distance calling network. There is simply no basis for characterizing fees of this type as unfair or as an unlawful charge for "not providing service." It would be most extraordinary for a federal court, sitting in diversity, to declare such charges unlawful under Chapter 93A.

    **2.    The Unjust Enrichment Claim Is Barred By The Existence of the Contract.**

The existence of the contract between Plaintiff and Verizon means that Plaintiff's claim of unjust enrichment must fail as a matter of law. *Boston Med. Ctr. Corp. v. Sec'y of the Exec. Office of Health & Human Servs.*, 463 Mass. 447, 467, 974 N.E.2d 1114, 1131-1132 (2012) (*citing* Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011)).   Unjust enrichment will not lie "where there is a valid contract that defines the obligations of the parties." *Id.*  As such, Plaintiff's unjust enrichment claims must be dismissed.

    **3.    The Amended Complaint Does Not State a Claim Under Chapter 93A.**

At most, a claim that a contract was improperly implemented would amount to an alleged breach of contract.  Such an alleged breach, without more, will not violate Chapter 93A. *See Whitinsville Plaza, Inc.*, 378 Mass. at 100-01, 390 N.E.2d at 251-252; *Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 280 (1st Cir. 2013) ("[G]ood faith disputes over billing [or] simple breaches of contract . . . do not constitute violations of Chapter 93A.") (citations omitted).

Plaintiff has failed to even assert any breach of contract claim in his Amended Complaint.  Even if he had, the Amended Complaint fails to provide factual averments that, taken as true, would be sufficient to show that Verizon's actions rise above the level of simple breach of contract to the kind of unfair or unjust conduct that could support a Chapter 93A claim. Where the plaintiff has failed to plead that "defendant was . . . attempting to extort anything" in exchange for correcting an error or that it was "attempting to manipulate or deceive [the plaintiff]," the allegations do not rise to the level of Chapter 93A claim and must be dismissed. *See Leet v. Cellco P'ship*, No. 06-40096-FDS, 2007 WL 3332803 (D. Mass. Oct. 19, 2007) (dismissing complaint for failure to state Chapter 93A claim where plaintiff alleged defendant failed to timely correct his credit report).  Because Plaintiff's complaint does not sufficiently

allege that Verizon acted with knowledge, intending to secure unbargained for benefits, or that Verizon' conduct was "extortionate," it must be dismissed.  *See Zabin v. Picciotto*, 73 Mass. App. Ct. 141, 169, 896 N.E.2d 937, 963 (2008); *Wilder v. Toyota Fin. Servs. Americas Corp.*, 764 F. Supp. 2d 249, 262 (D. Mass. 2011).[7]

Plaintiff has also failed to state *any* claim for fraud with sufficient detail to assert a claim for relief.  Fed. R. Civ. P. §9(b) ("In all averments of fraud, [or] mistake . . . the circumstances constituting fraud, [or] mistake . . . shall be stated with particularity.").[8]  The Plaintiff has failed to adequately allege "the time, place, and content of the alleged false or fraudulent representations."  *Arruda*, 310 F.3d at 19.  The Amended Complaint and Demand Letter's "formulaic recitation of the elements" of the Chapter 93A claim do not satisfy the federal pleading requirements.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The short description of how the MSL works included on Plaintiff's billing statement, *see* Amended Compl. ¶ 14, is not enough to support the claims set forth by Plaintiff.  *See McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980), *superseded by statute on other grounds*, Private Securities Litigation Reform Act of 1995, Pub.L. No. 104–67, 109 Stat. 737 (1995) (Rule 9(b) requires pleading of time, place, and content of alleged false representations to give adequate

---

[7]     Moreover, the contract between the Plaintiff and Verizon dictates that a "claim for . . . overpayment, together with proper evidence" must be submitted "within two years of the date of alleged overpayment."  Product Guide, General Terms and Conditions, Attach. 1, Ex. F at 7; *see also* Service Agreement at 3; Tariff at 19.  Plaintiff alleges billing errors that began in July 3, 2009, however all claims accruing before July 3, 2011 are barred.  Amended Compl. ¶ 2.  This two-year contractual statute of limitations applies to the entire putative class, as all the putative class members would have been bound by the terms of the Service Agreement and Product Guide, and all are subject to the terms of the Massachusetts tariff.

[8]     Because the unjust enrichment claim depends entirely upon the inadequately pled fraud allegations, it too must fail.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, No. 01-12257-PBS, 2007 WL 1051642, at *10 (D. Mass. Apr. 2, 2007) (unjust enrichment claims fail in fraud action where plaintiff fails to plead adequately under Rule 9(b) and could not conceivably allege some other tort claim).

14

notice of plaintiff's claim).   Because the Amended Complaint does not contain any other references to specific statements that the Defendants made that form the basis of the claim, and does not allege with any particularity when and where these statements were made, these Chapter 93A claims must be dismissed.  *See Bezdek v. Vibram USA Inc.*, No. 12-10513-DPW, 2013 WL 639145, at *3 (D. Mass. Feb. 20, 2013).

## IV.   CONCLUSION

For the foregoing reasons, Verizon respectfully requests that the Court dismiss Plaintiff's Amended Complaint in its entirety, with prejudice.

Respectfully submitted,

/s/ *Andrew G. McBride*
Andrew G. McBride (*Pro Hac Vice*)
amcbride@wileyrein.com
Joshua S. Turner (*Pro Hac Vice*)
jturner@wileyrein.com
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
Tel.: 202.719.7000
Fax: 202.719.7049
**Attorneys for Defendant**
**Verizon Enterprise Solutions LLC**

/s/ *William A. Worth*
William A. Worth, BBO # 544086
wworth@princelobel.com
PRINCE LOBEL TYE LLP
100 Cambridge Street, Suite 2200
Boston, MA 02114
Tel.: 617.456.8000
Fax: 617.456.8100
**Attorney for Defendant**
**Verizon Enterprise Solutions LLC**

Dated: This 25th day of September, 2013.

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2013, a copy of the foregoing Memorandum in Support of Defendant's Motion to Dismiss and accompanying documents were filed with the Court via ECF and served upon all parties pursuant to Local Rule 5.4.  *See* D. Mass. R. 5.4.

Respectfully submitted,

*/s/ William A. Worth*
William A. Worth, BBO # 544086
wworth@princelobel.com
PRINCE LOBEL TYE LLP
100 Cambridge Street, Suite 2200
Boston, MA 02114
Tel.: 617.456.8000
Fax: 617.456.8100
***Attorney for Defendant***
***Verizon Enterprise Solutions LLC***