United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| BRIAN LENFEST, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 13-11596-NMG |
| v. | ) ) | |
| VERIZON ENTERPRISE SOLUTIONS, LLC, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Here we have a putative class action brought by Brian Lenfest ("Lenfest"), who claims that defendant Verizon Enterprise Solutions, LLC ("Verizon") violated the Massachusetts Consumer Protection Act, M.G.L. c. 93A, and was unjustly enriched by failing to disclose minimum monthly charges for long distance telephone service.  Pending before the Court is defendant's motion to compel arbitration.  For the reasons that follow, the Court will allow defendant's motion to compel arbitration and stay the case during its pendency.[1]

---

[1] Because it will compel arbitration, the Court will also deny Verizon's outstanding motion to dismiss as moot.

## I. Factual Background and Procedural History

### A. Factual Background

Lenfest is a Boston-based Verizon business customer who, since 2008, has retained telephone service through Verizon. The phone numbers attached to Lenfest's account were originally activated in October, 2005 for an account in the name of Nunotte Zama ("Zama"). In March, 2008, Lenfest telephoned Verizon and assumed the ongoing billing and pre-existing charges for Zama's Verizon account. Verizon's standard business practice requires both the former and new account holders to contact Verizon and acknowledge that the new account holder agrees to assume the existing account holder's terms and conditions of service.

Lenfest's account with Verizon remains active. On each service bill since June, 2011, Lenfest has been charged a minimum monthly fee for a "Verizon FirmRate Advantage Plan" long distance calling plan ("the long distance calling plan"). That plan contains a "Minimum Spend Level" ("MSL") of ten dollars per month. Lenfest has not used the long distance calling plan at a sufficient level to reach the monthly MSL and has, accordingly, been billed for a "VES FirmRate Advantage Shortfall Charge" since his renewed enrollment in the long distance calling plan in June, 2011. In February, 2012, Lenfest was also charged a separate $45 usage shortfall fee.

Verizon has, on two separate occasions, sent a "Fulfillment Letter" and an accompanying "Service Agreement" to the account holder associated with Lenfest's account. The first fulfillment letter and service agreement was sent to Zama shortly after Verizon activated the account and phone numbers in October, 2005. A second such letter/agreement was sent to Lenfest on June 24, 2011 upon his renewed enrollment in the long distance calling plan.

Both fulfillment letters clearly stated "[f]or additional rate information, please visit our website at verizonld.com." Moreover, each fulfillment letter noted that "[l]ong Distance service provided by Verizon Enterprise Solutions [is] pursuant to service agreement and tariffs."

The service agreement accompanying each letter clearly referenced governing state tariffs and a "Product Guide." Both service agreements also stated

> [y]ou acknowledge that it is impractical to print in this document the complete Product Guide, which contains service descriptions, charges and other terms and conditions applicable to the Services and providing the Product Guides on Verizon's website and making it available upon request are reasonable means of notice and incorporation of those terms. If You do not know Your plan rates under tariff or if You would like a copy of Your Product Guide, You may contact Us either in writing or via telephone at the address or telephone number on Your bill and We will provide You with the information You request.

The tariff and product guide referenced in the service agreement are located on the verizonld.com website. The product guide contains a conspicuous "Alternative Dispute Resolution" ("ADR") clause. The ADR clause provides that

> the Parties agree to follow the ADR procedure set forth herein as their sole remedy with respect to any controversy or claim arising out of or relating to the Service Agreement or its breach. The parties agree that any such claims arising under the Service Agreement must be pursued on an individual basis in accordance with the procedure noted below. Even if applicable law permits class actions or class arbitrations, the ADR procedure agreed to herein applies and the parties waive any rights to pursue any claim arising under the Service Agreement on a class basis.

The product guide located on the verizonld.com website and referenced in the service agreement and state tariff has contained the ADR clause throughout the duration of plaintiff's account. Finding and retrieving the product guide from the verizonld.com website is, however, a labyrinthine endeavor requiring the user to navigate through a handful of tabs. Nevertheless, the product guide is undeniably available on the website.

In March, 2013, Lenfest emailed Verizon and requested a copy of his "contract." A Verizon customer service representative understood Lenfest's question to refer to the existence of a term agreement and replied that Lenfest was "not

under contract." In fact, the June, 2011, fulfillment letter sent to Lenfest clearly indicates that he was under no "term agreement" and thus would not face any early termination fees upon cancelling his service. Lenfest's telephone service with Verizon was, nevertheless, subject to the service agreement, tariff and product guide that pertained to all long distance customers.

B.  **Procedural History**

On July 3, 2013, Lenfest filed a class action complaint against Verizon Communications Inc. in this Court, alleging unfair and deceptive trade practices in violation of M.G.L. c. 93A, §§ 2, 9, 11 (Counts I and II), and unjust enrichment (Count III). Lenfest amended his complaint on September 11, 2013 to substitute Verizon Enterprise Solutions, LLC as the proper defendant.

On September 25, 2013, Verizon filed both a motion to compel arbitration and a motion to dismiss the complaint. The parties agreed to stay the motion to dismiss until after this Court ruled on the motion to compel arbitration.

II. **Motion to Compel Arbitration**

The essence of Lenfest's complaint is that Verizon has been charging him an undisclosed minimum monthly fee for long distance telephone service that Lenfest has seldom utilized.

-5-

Lenfest contends that he was never provided with a copy of his terms and conditions of service and never agreed to the ADR provision located in the online product guide.

In its motion to compel arbitration, Verizon contends that the facts in this case demonstrate that Lenfest impliedly assented to the ADR provision in the product guide both by assuming the pre-existing account in 2008 and continuing service in 2011 after receiving a renewed fulfillment letter and service agreement. Verizon asserts that both the 2005 and 2011 fulfillment letters and accompanying service agreements clearly refer to the online product guide and its included ADR provision.

### A. Legal Standard

Arbitration is a matter of contract and a party cannot be required to submit to arbitration any kind of dispute not specifically covered by the contract. AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986). Section 2 of the Federal Arbitration Act ("FAA") mandates that written arbitration agreements are valid, irrevocable and enforceable. 9 U.S.C. § 2. Section 4 of the FAA allows a party aggrieved by another party's failure to arbitrate according to the terms of a written arbitration agreement to petition for a court order directing that the arbitration proceed. 9 U.S.C. § 4. Whether

parties agreed to submit a particular dispute to arbitration is an issue to be decided by the Court, not the arbitrator. Id. Should the issue be referred to arbitration, the Court can issue a stay of the case pending resolution of the arbitration. 9 U.S.C. § 3.

A presumption of arbitrability arises where a contract contains an arbitration clause. AT&T Techs., 475 U.S. at 650. That presumption is particularly applicable where the arbitration clause at issue is broad in scope, such as where it provides for arbitration of "any" kind of controversy pertaining to the contract. See id. Under such agreements, parties should be required to submit their disputes to arbitration

> unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

Id. (internal quotation and citation omitted). If there are any doubts about coverage, the dispute should proceed to arbitration. See id.

When deciding a motion to compel arbitration, the Court must determine whether

> i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.

Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008) (quoting Bangor Hydro-Electric Co. v. New England Tel. & Tel. Co., 62 F. Supp. 2d 152, 155 (D. Me. 1999)).

**B. Analysis**

**1. Written Agreement to Arbitrate**

Lenfest contends that he never signed a contract with Verizon and therefore never agreed to the ADR clause in the product guide. While it is true that Lenfest never actually signed an agreement with Verizon, he nevertheless (1) orally assumed the pre-existing account and its accompanying terms and conditions in 2008 and (2) was put on notice of the ADR clause through his receipt of the 2011 fulfillment letter and accompanying service agreement. Both facts are sufficient to bind Lenfest to the arbitration commitment.

In March, 2008, Lenfest orally agreed to assume the outstanding charges and bind himself to the present terms and conditions of Zama's account. Lenfest was thus subject to the then-existing terms and conditions of service originally assented to by Zama. Zurich Am. Ins. Co. v. Watts Industries, Inc., 417 F.3d 682, 687 (7th Cir. 2005) (non-signatory can be bound by arbitration agreement through assumption of contract). Lenfest cannot claim ignorance of the terms and conditions of his account merely on the grounds that he assumed the account after its origination. The terms and conditions were

-8-

encapsulated in the service agreement sent to Zama with the 2005 fulfillment letter, which incorporated by reference the online product guide containing the ADR provision. Therefore, upon assuming Zama's account, Lenfest agreed to the pre-existing terms and conditions.

More importantly, Lenfest received a fulfillment letter himself in June, 2011 shortly before the minimum monthly charges at issue began appearing on his Verizon invoices. That fulfillment letter again referred to the Verizon website for "additional rate information" and indicated that plaintiff's service was subject to the "service agreement and [published] tariffs." The letter was accompanied by a copy of the Verizon service agreement, which referred to governing state tariffs and the online product guide. The service agreement also clearly explained that

> it is impractical to print in this document the complete Product Guide, [and that providing] the Product Guide on Verizon's website [is a] reasonable means of notice and incorporation of those terms.

The facts therefore indicate that Lenfest received sufficient notice of the terms and conditions of his long distance telephone service with Verizon, including the ADR provision in the product guide. See Lousararian v. Royal Caribbean Corp., 951 F.2d 7, 11 (1st Cir. 1991) (notice of terms of a contract depend not on "actual knowledge" but instead turn

on "the opportunity for such knowledge").  The fulfillment letter and service agreement sent to both Zama in 2005 and Lenfest in 2011 sufficiently incorporated the arbitration clause by reference.  See Awuah v. Coverall N. Am., Inc., 703 F.3d 36, 42-43 (1st Cir. 2012).  Lenfest could have learned that the ADR clause governed his service with Verizon had he attempted to locate the product guide on Verizon's website that was referred to in his service agreement.

The continued use by Lenfest of Verizon's services after both the assumption of the contract in 2008 and receipt of the fulfillment letter in 2011 manifested his assent to Verizon's terms and conditions, including the ADR clause.  Schwartz v. Comcast Corp., 256 F. App'x 515, 518 (3d Cir. 2007).

As a result, it is clear that Lenfest willingly entered into an agreement that required arbitration and the first prong of the relevant test is satisfied.

### 2. Scope of Arbitration Agreement and Waiver of Right to Arbitrate

The second and third prongs that warrant compelling arbitration are easily met here.

The ADR clause included in the product guide broadly covers "any controversy or claim arising out of or relating to the Service Agreement or its breach."  The clause further provides that

> [e]ven if applicable law permits class actions or class arbitrations, the ADR procedure agreed to herein applies and the parties waive any rights to pursue any claim arising under the Service Agreement on a class basis.

Lenfest's claim that Verizon charged unreasonable fees for long distance services and failed to disclose the basis for those charges plainly falls within the broad scope of the arbitration provision. See AT&T Techs., 475 U.S. at 650. Accordingly, the Court finds that the second prong of the test is met.

Finally, Verizon's limited involvement in this case is insufficient to find waiver of the right to arbitrate. See e.g. Creative Solutions Grp., Inc. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir. 2001) (discussing factors courts consider in determining whether waiver has occurred). Verizon has, in this case, filed a motion to dismiss and prepared initial corporate disclosures pursuant to Fed. R. Civ. P. 7.1. It has not, thereby, substantially invoked the requisite "litigation machinery" nor are the parties "well into preparation of a lawsuit" that would constitute a waiver of the right to arbitrate. Jones Motor Co., Inc. v. Chauffeurs, Teamsters & Helpers Local Union No. 633 of N.H., 671 F.2d 38, 44 (1st Cir. 1982)(quoting Reid Burton Constr., Inc. v. Carpenters Dist. Council, 614 F.2d 698 (10th Cir. 1980)). In fact, Lenfest does not even assert that Verizon has waived its right to arbitrate nor that he has been prejudiced by a delay in such a request.

Thus, the Court finds that the third prong of the test is satisfied.

Verizon's motion to compel arbitration will be allowed.  In light of this holding the case will be stayed pending arbitration.

**ORDER**

For the foregoing reasons, Verizon Enterprise Solutions, LLC's motion to compel arbitration (Docket No. 20) is **ALLOWED**. The case is **STAYED** pending arbitration.  Verizon Enterprise Solutions, LLC's motion to dismiss (Docket No. 22) is **DENIED** as moot.  The parties are directed to submit to this Court a joint status report with respect to the progress of the arbitration proceeding on March 31, 2015 and every six months thereafter. **So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 29, 2014